March 9, 1939

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-372

Re: Necessity of fee owner
qualifying as "distributor"
of motor fuel under Sec. 1
(c), Art. 7065a, V.A.C.S.
in order to receive and use
in agricultural tractors
his one-eighth royalty of
distillate produced from
gas well by lessee.

By your communication of February 16, 1939, you request
the opinion of this Department upon the following question and
supporting fact situation:

"W. K. Freeman, et ux, Katy, Texas, Waller County,
has executed a five year commercial lease for oil, gas
and minerals carrying the usual one-eighth royalty, to
the Stanolind Oil and Gas Company.

"A well has been drilled, which has been classed by
the Railroad Commission as a gas well. Gas produced
from this well is being sold to the United Production
Company, of Houston, Texas. A quantity of distillate is
recovered in connection with the flowing of gas from this
well, which the fee owner, W. K. Freeman, et ux, is de-
sirous of being paid the one-eighth royalty of the amount
of distillate produced for the purpose of using it as fuel
for tractors in connection with agricultural operations.

"The distillate produced comes within the taxable
range of products as described in the definition of the
Motor Fuel Tax Law, having a flash point of below 112
degrees Fahrenheit.

"The question presented for the consideration of this office is whether the fee owners should qualify as a motor fuel distributor under the statute in order to receive payment of the royalty in this manner, and use the distillate received as royalty payment in motorized farm implements or otherwise."

Section 1 (c), Article 7065a, Vernon's Annotated Civil Statutes, defines "distributor" of motor fuel as follows:

"'Distributor' shall mean and include every person in this State who refines, manufactures, produces, blends or compounds motor fuel, or in any other manner acquires or possesses motor fuel and makes first sale of the same in this State; and it shall also include every person in this State who ships, transports or imports any motor fuel into this State and makes the first sale of same in this State."

Section 1 (d) of the above Act defines "first sale" in the following language:

"'First Sale' shall mean and include the first sale, distribution or use in this State of motor fuel refined, blended, imported into, or in any other manner produced in, acquired, possessed or brought into this State."

Section 2 of said Motor Fuel Tax Law imposes and levies a tax upon the "first sale" of motor fuel, and provides that the tax shall accrue on such "first sale".

Section 1 (a) of the Act defines "motor fuel", and we shall assume, for purposes of this opinion, that the so-called distillate, produced from a gas well under the circumstances and in the manner outlined in your letter, possesses such physical and chemical attributes as would bring it within this definition of "motor fuel".

It remains to be determined, first, whether the transfer or setting over by lessee, Stanolind Oil & Gas Company, to lessor, W. F. Freeman and wife, of their one-eighth royalty in this product, is either a "sale", "use" or "distribution", so as to constitute such transaction a "first sale" of motor fuel within the tax levy above mentioned; and secondly, if such "first sale" is not thereby made, will the use of such received product by W. F. Freeman in agricultural tractors be a "first sale", as defined, so as to con-

Hon. Geo. H. Sheppard, March 3, 1939, Page 3


stitute said Freeman and wife "distributors" of motor fuel and require their statutory qualification by taking out a per it and post as a proper bond.

Without going into the field of Oil and Gas Law, we think it might be premised that under the commercial oil, gas and mineral lease described in your letter, title and ownership of one-eighth of all oil, gas and minerals produced and saved, was vested in H. H. Freeman and wife as royalty-holders, and title to seven-eighths thereof vested in lessee, Stanolind Oil & Gas Company.

From this it follows that the mere transfer or giving over by Stanolind Oil & Gas Company, lessee, to H. H. Freeman and wife, lessors, of one-eighth of the substance produced and saved from the property under lease, constitutes merely a segregation or partition of title and property rights in and to such product, held in such respective amounts from the inception of the lease, and does not constitute either a "sale", "use" or "distribution" of such product within the meaning of the above-quoted definition of a "first sale", so as to accrue a tax thereon.

In the case of State v. Texas Company, 174 So. 359, it was held that where oil well lessor, who owned interest in casinghead gas when it reached surface, exercised option reserved in contract of sale of gas to lessee to receive, in lieu of money payments, percentage of gasoline extracted from gas by lessee, and it was admitted that gasoline delivered under option represented royalty gasoline, lessee was not "owner" of gasoline delivered to lessor under option, as respects lessee's liability for gasoline tax.

A comparison of the Louisiana Act involved in this case with the Motor Fuel Tax Law of Texas indicates that both measures cause the tax to accrue on the first "sale", "use" or "distribution" of motor fuel. The holding of the Supreme Court of Louisiana that delivery by lessee to lessor of the latter's royalty interest in certain casinghead gasoline, manufactured from casinghead gas, did not constitute either a "distribution", "use" or "sale" within such statute, so as to accrue a tax thereon, is considered by us strong persuasive authority.

It is accordingly our opinion that no liability for motor fuel taxes arises under Section 2 of Article 7065a, Vernon's Annotated Civil Statutes, by reason of the transfer and setting over by Stanolind Oil & Gas Company to H. H. Freeman and wife, such portion of the product in question, as represents the latter's one-

eighth royalty. It will follow from this conclusion that M. E. Freeman and wife may lawfully receive their one-eighth royalty in this product from Stanolind Oil & Gas Company, without any statutory duty or obligation resting upon either of the parties to first qualify as motor fuel distributors under the Act.

Turning to the second phase of your inquiry, it is our opinion that the use of this product by Mr. Freeman in agricultural tractors and motorized farm equipment would constitute such a "first sale" within the statutory definition, as to require him to first qualify as a "distributor" of motor fuel, under the controlling provisions of the Motor Fuel Tax Law. Such proposed non-highway use by Freeman would bring him squarely within the provisions of Section 13 of the Motor Fuel Tax Law and entitle him thereunder, to a refund of taxes due and paid on the product actually so used. But this is not in the nature of an exemption and does not excuse his compliance with the statutes requiring the procurement of a distributor's permit and the posting of a proper bond before making a first "sale", "use" or "distribution" of motor fuel in Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

PMN:H

APPROVED

ATTORNEY GENERAL OF TEXAS